IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ISRAEL BENAVIDES | § | |
| | § | |
| v. | § | C.A. NO. C-10-341 |
| | § | |
| ROMEO RAMIREZ, ET AL. | § | |

**OPINION AND ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff is a state inmate currently confined at the Garza East Unit in Beeville, Texas. He filed this civil rights action pursuant to 42 U.S.C. § 1983. Pending are the parties' motions for summary judgment. (D.E. 30, 31). They both filed opposition briefs. (D.E. 32, 33). For the reasons that follow, Defendants' motion is granted, Plaintiff's is denied, and this action is dismissed.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the parties, (D.E. 11, 20), the case was referred to a United States Magistrate Judge to conduct all further proceedings, including entry of final judgment. (D.E. 21); see also 28 U.S.C. § 636(c).

## II. PROCEDURAL HISTORY

On October 25, 2010, Plaintiff filed this complaint, suing the following individuals: (1) Duval County Sheriff Romeo Ramirez; (2) Duval County Chief Deputy Gino Martinez; (3) Duval County Magistrate Juan Garcia; (4) San Diego Police Officer Lieutenant Delgado; and (5) Laredo Parole Officer Velasquez. (D.E. 1).

A <u>Spears</u>[1] hearing was held on November 22, 2010. On December 6, 2010, Plaintiff's claims against Magistrate Garcia were dismissed with prejudice as barred by judicial immunity, his claims against Lieutenant Delgado and Parole Officer Velasquez were dismissed because the challenged conviction had not been set aside before pursuing damage claims, and his retaliation claims against Defendants Ramirez and Martinez were retained. <u>Benavides v. Ramirez</u>, No. C-10-341, 2010 WL 5067685 (S.D. Tex. Dec. 6, 2010) (unpublished).

On January 13, 2011, Defendants filed an answer. (D.E. 19). Plaintiff filed a response to the answer on February 14, 2011. (D.E. 25). On May 13, 2011, Defendants filed a motion for summary judgment. (D.E. 30). Plaintiff filed a motion for summary judgment on May 18, 2011. (D.E. 31). On June 13, 2011, Defendants filed a response to Plaintiff's motion for summary judgment. (D.E. 32). Plaintiff filed a response to Defendants' motion for summary judgment on June 15, 2011. (D.E. 33).

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Defendants transferred him repeatedly between county jails in retaliation for his work as a "writ-writer"[2] and for otherwise exercising his First Amendment

---

[1] <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), <u>abrogated on other grounds by</u> <u>Neitzke v. Williams</u>, 490 U.S. 319, 324 (1989); <u>see also</u> <u>Eason v. Holt</u>, 73 F.3d 600, 602 (5th Cir. 1996) (testimony given at a <u>Spears</u> hearing is incorporated into the pleadings) (citation omitted).

[2] A writ writer "is generally understood to mean a prisoner who files lawsuits, and/or assists other prisoners in the preparation or prosecution of lawsuits, usually against prison (or sometimes jail) authorities and including conditions of confinement and habeas cases and suits against law enforcement and court personnel." <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 309-10 (5th Cir. 1997). Elsewhere, Plaintiff suggests that he was retaliated against because of his work as a "jailhouse lawyer," (D.E. 1, at 4), a roughly synonymous term. <u>See</u> Black's Law Dictionary 911 (9th ed. 2009) (a jailhouse lawyer is "[a] prison inmate who seeks release through legal procedures or who gives legal advice to other inmates.").

rights.³ (D.E. 1). He seeks punitive and exemplary damages for his mental anguish. (D.E. 31, at 3).

## IV. FACTUAL BACKGROUND

On August 12, 2008, Sergeant Alan Gonzalez, an officer with the San Diego, Texas Police Department, approached Plaintiff while investigating a suspicious vehicle. (D.E. 30-1, at 1). He conducted a search for outstanding warrants and discovered that Plaintiff was wanted for a parole violation. Id. at 1-2. A memorandum sent by the Texas Department of Criminal Justice, Parole Division ("Parole Division") regarding that warrant directed law enforcement to "transfer [the] subject to your county jail." Id. at 2. As a result, Plaintiff was arrested and booked into Duval County Jail. Id. at 3, 5.

On June 21, 2009, Plaintiff appeared before a magistrate in Nueces County, Texas on charges of shoplifting, and he was detained on a $2,500 bond. Id. at 6-8. He pled guilty on July 23, 2009 and was convicted and sentenced to sixty days incarceration at the Nueces County Jail. Id. at 11-13. While confined there, Plaintiff was charged with burglary and engaging in organized crime in Duval County, Texas. Id. at 13. On September 21, 2009, after his sixty-day sentence, he was transferred from Nueces County Jail to Duval County Jail pursuant to a detainer on the original parole violation charge. Id. at 2, 14-15.

On October 2, 2009, Plaintiff submitted a form requesting a copy of the penal code and sample motions regarding habeas, discovery, and bond hearings, and complaining that he had

---

³ In the order dismissing certain claims and retaining the case, Plaintiff's allegations were understood to focus on the purported decision not to house him in Duval County Jail. Benavides, 2010 WL at *2. Given the volume of transfers that took place, the breadth of Plaintiff's complaints in his more recent filings, and the liberal pro se prisoner pleading standard, his allegations are now understood to target all of the various transfers which took place, though the opinion also addresses the particular allegations made in the initial complaint.

been wrongfully denied an attorney.  Id. at 17.  The request was approved the same day.  Id.  According to Plaintiff, on or around October 10, 2009, while at the Duval County Jail, he filed a grievance complaining that he had not yet been appointed an attorney.  Shortly thereafter, he was transferred to Live Oak County Jail.  Id. at 7, 18; (D.E. 1, at 4).  Plaintiff recalls that Defendants informed him that it was because he was a "writ writer."  He remained at Live Oak County Jail from October 2009 until April 2010.  During that time, he wrote letters to Duval County officials inquiring about the appointment of a lawyer and seeking to be returned to the Duval County Jail.  He did not receive a response to his inquiries.

On January 29, 2010, the pre-revocation warrant was withdrawn.  (D.E. 30-31, at 31).  Plaintiff sent a letter to the Duval County District Court on February 4, 2010, requesting a bond hearing and bond reduction.  Id. at 32-33.  To support the request, he argued that he had been improperly denied an attorney, that his bond was excessive, and that he had "been cleared by [a] parole supervisor."  Id.  Plaintiff sent a letter to the district attorney's office with the same request, in which he also noted that his pre-revocation warrant had been withdrawn.  Id. at 38.

On February 23, 2010, the Parole Division issued a memorandum alerting law enforcement that Plaintiff was wanted for an administrative release violation and directing that he be transferred "to your county jail."  Id. at 39.

He was indicted by a Duval County grand jury on March 29, 2010 for burglary and engaging in organized criminal activity.  Id. at 40-41.  On April 21, 2010, Plaintiff was arraigned and appointed an attorney and then released on bond on April 23, 2010.  Id. at 45-49.  On April 26, 2010, Plaintiff was arrested in Webb County, Texas for the February 23, 2010 parole-violations warrant.  Id. at 39, 50.

Between June 2, 2010 and January 17, 2011, Plaintiff was transferred between Webb County Jail and Duval County Jail eleven times. Id. at 51-54, 64-68, 73-77. Each transfer from Webb County to Duval County was executed pursuant to a bench warrant issued by a Duval County judge to ensure that he was present for hearings related to his pending burglary and organized crime charges. Id. Each transfer back to Webb County was executed pursuant to a "hold and return" warrant issued by the Webb County Sheriff's Office, informing Duval County authorities that Plaintiff was facing parole violation charges in Webb County. Id. at 33-34, 53-54. On July 19, 2010, he sent a letter to an assistant district attorney, sheriff, and judge for Duval County, complaining that he was improperly denied an attorney, and that he was transferred from Duval County to Webb County as harassment. Id. at 55-56.

Plaintiff filed an application for state habeas relief on August 4, 2010, arguing that he was denied his right to an attorney and a speedy trial, and that his arrest warrant was invalid. Id. at 57-59. The same day, he sent a letter to the same three Duval County officials that he addressed in the July 19, 2010 letter, asking that he be afforded an opportunity to seek rehabilitation for his drug problem and that he be considered for a suspended sentence. Id. at 63. On August 19, 2010, Plaintiff sent letters to Defendants and other Duval County officials complaining that he should be held in Duval County as that was where the criminal charges were pending and also where his parole had originated.

On September 22, 2010, Plaintiff's application for a writ of habeas corpus was denied because he failed to establish jurisdiction and failed to comply with Article 11.14 of the Texas Code of Criminal Procedure, the provision which sets out the requirements for state habeas applications. Id. at 66.

5

On January 18, 2011, Plaintiff was convicted in Duval County of organized criminal activity and sentenced to five years incarceration. Id. at 75-77.

In an affidavit, Defendant Ramirez swears that the Texas Commission on Jail Standards recommends that Duval County Jail hold a maximum of twenty-eight inmates, and requires that it hold no more than thirty-three, and that individuals "are routinely transferred between Texas jails" in order to remain in compliance with that recommendation. Id. at 18. He further avers that Plaintiff's arrival at Duval County Jail in October 2009 caused the facility to exceed its limits and that he was transferred to Live Oak County Jail, along with three other individuals, as a result. Id. Finally, he indicates that "as many as eight" of his prisoners were transferred to Live Oak County during Plaintiff's incarceration. Id. Defendants submit records attesting to the regular transfer of prisoners from Duval County to Live Oak County to ameliorate overcrowding. Id. at 19-30.

## V. DISCUSSION

Defendants move for summary judgment on grounds of qualified immunity because "Plaintiff was handled by Defendants exclusively as directed by valid warrants issued by the State of Texas, orders of the Court, by regulatory requirements and by department rules." (D.E. 30, at 12). Plaintiff moves for summary judgment because the records show Defendants acted with malicious and retaliatory intent. (D.E. 31).

**A.     The Legal Standard For A Summary Judgment Motion.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and

admissions on file, in the light most favorable to the non-movant. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams, 836 F.2d at 960 (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.      Defendants Are Entitled To Qualified Immunity.**

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, __, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted).  "To discharge this burden, a plaintiff must satisfy a two-prong test."  Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005).  "First, he must claim that the defendants committed a constitutional violation under current law."  Id. (citations omitted).  "Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  Id. (citations omitted).  While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  Pearson, 555 U.S. at __, 129 S. Ct. at 818 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

**1.      Step 1 – Plaintiff has not established a constitutional violation.**

A prisoner's First Amendment right of access to the courts includes the right to seek redress through an established prison system.  See Jackson v. Cain, 864 F.2d 1235, 1248-49 (5th Cir. 1989).  Prison officials may not retaliate against a prisoner for exercising this right.  Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted).  Because it is well established

8

that prison officials may not retaliate against a prisoner for exercising the right to file lawsuits and administrative grievances, actions that might not otherwise be offensive to the Constitution can give rise to a constitutional claim if taken in retaliation for the exercise of the protected conduct. Id. at 1165 ("An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate.") (citations omitted).

To ultimately prevail on a § 1983 claim for retaliation, "'a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'" Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006) (quoting McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. Johnson, 110 F.3d at 310 (citation omitted). "Mere conclusory allegations of retaliation will not withstand a summary judgment challenge." Woods, 60 F.3d at 1166 (citation omitted).

The purpose of allowing retaliation claims pursuant to "§ 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights." Morris, 449 F.3d at 686 (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)). However, some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." Id. "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." Id. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

### a) Plaintiff has alleged a specific constitutional right.

To the extent Plaintiff alleges that he was retaliated against for preparing legal materials on behalf of other inmates (the common meaning of writ writer and jailhouse lawyer), he fails to invoke a specific constitutional right, for the First Amendment does not guarantee a prisoner's ability to advocate for others. See Johnson, 110 F.3d at 311 ("secondary litigation activity, *i.e.*, legal research and writing that does not involve preparation of lawsuits challenging a writ writer's own conviction(s) or the conditions of his or her confinement, may [not] comprise the basis of a retaliation claim") (citing Lewis v. Casey, 518 U.S. 343, 355 (1996)). His claims relating to retaliation for being a writ writer working for fellow-prisoners must therefore be dismissed for failure to allege a specific constitutional right. However, to the extent Plaintiff complains that he was punished for filing an application for habeas corpus in his own case, and for filing grievances, he does allege a specific constitutional right. See Jackson v. Cain, 864 F.2d at 1248-49.

### b) Plaintiff has not established retaliatory intent.

Plaintiff has not alleged any facts that would indicate that Defendants possessed retaliatory intent, let alone pointed to any evidence in the record to confirm the allegations. Indeed, in his latest filing, he actively contradicts the theory that such intent existed. For he suggests that Defendants were unaware of his complaints due to inadequate grievance procedures. (D.E. 31, at 2). In response, they rightly note that this argument constitutes an admission that Plaintiff fails to establish a requisite element of retaliation, namely, retaliatory intent. (D.E. 32, at 8). In rebuttal, he submits that a deliberate effort "to avoid guilty knowledge is all the guilty knowledge the law requires," and argues that "deliberate ignorance and positive

10

knowledge are equally culpable." (D.E. 33, at 3). Plaintiff's argument does not withstand legal or logical scrutiny. An officer clearly cannot possess an intent to punish an individual for acts he knows nothing about. As a result, any claim of retaliation relating to Plaintiff's alleged grievances must be dismissed for lack of retaliatory intent.

Turning to the allegation that Plaintiff was punished for filing his own application for habeas corpus, his inference of intent is based on sheer assertion alone, assertion that is not contradicted by the record. Most devastatingly, his request for habeas corpus materials was fulfilled the very day he submitted it. (D.E. 30-1, at 17). Defendants could not have been that irritated by the prospect of his application if they promptly and unhesitatingly facilitated his efforts. Nor has Plaintiff made clear why the filing of a routine legal motion that jails around the country see every day would anger officials. Moreover, if the application was so irksome, assisting in its preparation and then transferring the applicant to a different county would not have been the most natural retribution to exact, as it would not–and indeed did not–prevent or delay the application from prompt judicial resolution. See Lara v. Sheahan, No. 06-C-669, 2007 WL 1030304, at *3 (N.D. Ill. Mar. 30, 2007) (unpublished) (assuming that a § 1983 claim for denial of access to the courts did not lie where there was no delay in filing the appeal in question).

That leaves the allegation that Plaintiff was transferred for filing complaints. The only documents in the record that could be labeled complaints are the series of letters Plaintiff sent between July 19, 2010 and September 22, 2010. (D.E. 30-1, at 55-59, 63). These letters cannot form the basis of any retaliation claim because they were created after the alleged retaliatory acts. Evidently, the claim rests on the alleged grievance filed on or around October 10, 2009, in

which Plaintiff supposedly protested that he had not yet been appointed an attorney. There is no evidence regarding the grievance, no confirmation that it exists, and no records suggesting that it would have induced Defendants to begin harboring retaliatory intent. Plaintiff cannot carry his burden on summary judgment with such an absence, particularly when the record as a whole uniformly supports Defendants' account of his transfers. He therefore fails to establish retaliatory intent.

        **c)**        **Plaintiff sufficiently establishes retaliatory adverse acts.**

Plaintiff was transferred eleven times between various jails over the course of approximately a year and a half. The result of these transfers was to distance him from his family and attorney while he prepared to face criminal charges. Transfers between correctional institutions can, under some circumstances, constitute retaliatory adverse acts. See Morris, 449 F.3d at 687. Although Plaintiff does not suggest that any of the transfers exposed him to more dangerous or less humane conditions, as did the plaintiff in Morris, he does allege that Defendants deliberately moved him to a facility far from his family and criminal defense attorney, and these claims support the proposition that the alleged acts were sufficiently adverse. See Siggers-El v. Barlow, 412 F.3d 693, 702 (6th Cir. 2005) (inter-prison transfer is not de minimis when it "made it more difficult for his attorney to visit with or represent him because he was moved further away from her"); see also Davis v. Kelly, 160 f3d 917, 920 (2d Cir. 1998) ("[a] prisoner has no liberty interest in remaining at a particular correctional facility, but prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights"). Furthermore, the sheer number of transfers involved here suggests that they cannot be considered de minimis. See Johnson v. Fla. Dep't of Corrs., No. 3:04-CV-522, 2007 WL

4404209, at *5 (M.D. Fla. Feb. 22, 2007) (unpublished) (two transfers within a short period of time may create a genuine issue of material fact regarding retaliation). Finally, Defendants do not argue that the transfers were de minimis or not adverse. It must be concluded, therefore, that the transfers "might well 'chill or silence a person of ordinary firmness from future First Amendment activities,'" and Plaintiff consequently satisfies this element of the retaliation inquiry. Bibbs v. Early, 541 F.3d 267, 272 (5th Cir. 2008) (quoting Morris, 449 F.3d at 685).

### d) Plaintiff has not established causation.

Defendants argue that Plaintiff's October 2009 transfer to Live Oak County Jail could not have been caused by retaliation because he had not yet become a writ writer. (D.E. 30, at 13). Construing the record liberally in Plaintiff's favor, however, it can be inferred that his October 2, 2009 request for habeas forms alerted Defendants to his propensity for legal drafting.

More plausibly, Defendants submit that there is no evidence of causation regarding the transportation between Webb and Duval Counties because they "did exactly what they were directed to do pursuant to the warrants and instruments of the State of Texas and Counties of Webb and Duval." Id. at 14. In response, the only facts Plaintiff has alleged to justify an inference of retaliatory intent are 1) that he should not have been housed in Webb County because no judge ordered it, (D.E. 31, at 2), and 2) that Defendants have insufficiently proven that his admission to Duval County tipped the inmate population over capacity. (D.E. 33, at 2).

Neither allegation can support the inference. The first argument essentially reduces to a challenge to the validity of the "hold and return" warrants, which authorized Plaintiff's return from Duval County to Webb County after each court hearing, and to the administrative release warrant, which directed law enforcement to book him into the jail for the county in which he was

arrested. Both sets of warrants justified his continuing confinement in Webb County and neither were issued by Duval County, Defendants' employer. (D.E. 30-1, at 39, 53). Civil rights claims must allege the personal involvement of the defendants, Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (citation omitted), or failing that supervisory liability such that a "causal connection" links the purported acts to "the constitutional violation sought to be redressed." Harvey v. Andrist, 754 F.2d 569, 572 (5th Cir. 1985) (citations omitted). The evidence reflects that neither is present here, and the claim should therefore be dismissed for lack of personal involvement. See Easley v. Martin, No. 93-4444, 1994 WL 93415, at *5-6 (5th Cir. Mar. 15, 1994) (per curiam) (unpublished) (claim of retaliation for writ writing based on prison transfer with ostensible purpose of relieving overcrowding properly dismissed where plaintiff failed to provide "the slightest factual support concerning ... [the defendants'] involvement").

    Relatedly, warrants are, as a general matter, presumptively valid, see Franks v. Delaware, 438 U.S. 154, 171 (1978), and Defendants can hardly be faulted for acquiescing in the request of officials in a nearby county. See Herring v. United States, 555 U.S. 135, 129 S. Ct., 695, 704 (2009) (police acted objectively reasonable in relying upon warrant information from authorities in adjoining county). In addition, the charge upon which the hold and return warrants were based–a parole violation–does not implicate the full constitutional rights afforded to an accused individual. See Morrissey v. Brewer, 408 U.S. 471, 480 (1972) ("revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply") (citing Mempa v. Rhay, 389 U.S. 128 (1967)). Indeed, the requirements for warrants in particular are significantly lessened when law enforcement is dealing with a parolee or probationer. See See v. Caldwell, No. 10-314, 2010 WL 3998751, at *4 n.7 (M.D. La. Sept.

9, 2010) (unpublished) (collecting cases from, inter alia, Supreme Court and Texas Court of Criminal Appeals), adopted by 2010 WL 4073513 (M.D. La. Oct. 12, 2010) (unpublished). When considered in this light, Plaintiff's claim–which challenges not his confinement, but his location–and his argument–which attacks not the validity or existence of a warrant, but the fact that it was issued by the executive rather than the judicial branch–fall well short of establishing causation. Ultimately, the attack on the housing determination reduces to the invocation of a right to placement at a particular penal institution, and that is a right that Plaintiff does not possess. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); see also Moore v. U.S. Att'y Gen., 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam) (citations omitted) (no cognizable claim for a transfer).

Turning to the transfer to the Live Oak County Jail, that transfer was justified not by a warrant, but by overcrowding at the Duval County Jail. Defendants' evidence that Plaintiff's transfer to Live Oak County was ordered in the interest of alleviating overcrowding consists of an affidavit by Defendant Ramirez attesting to the capacity of Duval County Jail as determined by the Texas Commission on Jail Standards, his averment that Plaintiff's admission brought the jail above its limits, and records reflecting the routine transfer of prisoners between the two facilities. (D.E. 30-1, at 18-30). Plaintiff acknowledges that space at Duval County is limited, but insists that there was still room when he arrived, and further insists that he was not transported to Live Oak County with three other prisoners, contrary to Defendants' assertions.

Overcrowding in county jails, and in Texas county jails in particular, is a serious risk that can violate the constitutional rights of inmates. See Castillo v. Cameron Cnty., Tex., 238 F.3d 339, 354 (5th Cir. 2001) (citing Rhodes v. Chapman, 452 U.S. 337, 347-50 (1981)).

Transferring prisoners to more capacious facilities is a reasonable–indeed, sometimes necessary–method for dealing with the issue. See Alberti v. Klevenhagen, 46 F.3d 1347, 1360-61 (5th Cir. 1995). Defendants' submission of records detailing the regular movement of prisoners from Duval to Live Oak Counties undermines the assumption that any individual transfer was done out of retaliation, the assumption upon which Plaintiff's entire argument relies. See Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir. 1987) (judgment properly entered against plaintiff alleging retaliatory transfer where evidence regarding prison procedures indicated that similar transfers were "'standard procedure'" and available evidence reflected the legitimacy of the transfer).

Finally, although Defendant Ramirez' affidavit represents the assertion of a litigant, the burden shifted to Plaintiff when Defendants invoked qualified immunity, and the affidavit presents a compelling account of the transfer. The only submission Plaintiff has made to doubt that account is a conclusory allegation, wholly unsupported by the record, that he was transferred as a sanction for exercising his First Amendment rights. In sum, he has presented no evidence to suggest that he was transferred out of retaliation and there is ample evidence to conclude otherwise. As a result, he fails to show causation. Furthermore, because he satisfies only two of four elements–each of which is required–he insufficiently demonstrates that a constitutional violation occurred and does not fulfill his burden on the first prong of the qualified immunity analysis. Accordingly, Defendants are entitled to qualified immunity and the action must be dismissed.

### 2. Step 2 – Plaintiff has not shown that Defendants acted objectively unreasonable.

Because Defendants' conduct did not violate a constitutional right, there is no need to ask whether that conduct was objectively unreasonable in light of clearly established law. See Collier v. Montgomery, 569 F.3d 214, 218 (5th Cir. 2009) (reversing denial of summary judgment on § 1983 action on grounds of qualified immunity with reference only to first prong of Saucier test). If that examination is done, however, it likewise does not support his allegations.

When assessing objective reasonableness, it is necessary to articulate the asserted constitutional right more specifically. Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 460 (5th Cir. 2001). Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendants violated the United States Constitution." Id. (citation omitted). For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Under the second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603 (1999)). Even officers who interpret the law mistakenly but reasonably are entitled to immunity. See Creighton, 483 U.S. at 641. The purpose of the "clearly established law" requirement is to avoid retroactive application of "newly created legal standards" to state actors

who had no reason to know they were exposing themselves to liability. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 928 (5th Cir. 1992) (citing Harlow, 457 U.S. at 819).

It is well-settled that a law enforcement officer acts objectively reasonable for qualified immunity purposes when he relies upon a facially valid warrant. See Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 280 (5th Cir. 1992) (citations omitted). Moreover, for the same reasons that Plaintiff fails to demonstrate that Defendants transferred him to Live Oak County Jail out of retaliation, he fails to show that they acted objectively unreasonable in so doing. Plaintiff presents no reason to suspect that his transfers were caused by anything other than cooperation with legitimate law enforcement requests and a desire to avoid overcrowding (and thereby protect the constitutional rights of incarcerated individuals). Defendants acted objectively reasonable, and Plaintiff fails to satisfy his burden on the second prong of the qualified immunity inquiry. Consequently, Defendants are entitled to qualified immunity and they are granted summary judgment.

## C. Plaintiff's Cross-Motion For Summary Judgment Is Denied.

Because Plaintiff's claims are defeated by qualified immunity, his cross-motion for summary judgment is denied.

## VI. **CONCLUSION**

For the reasons stated herein, Defendants' motion for summary judgment, (D.E. 30), is GRANTED, Plaintiff's motion for summary judgment, (D.E. 31), is DENIED, and this action is dismissed with prejudice.

ORDERED this 27th day of June 2011.

BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE